UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

**Stephen Kapp,**

    *Plaintiff,*

  v.                                                 **Case No. 3:11-cv-393**
                                                                  **Judge Thomas M. Rose**

**Sedgwick CMS, AT&T Umbrella Benefit Plan 1,**

    *Defendants.*

---

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR JUDGMENT ON ADMINISTRATIVE RECORD, ECF No. 35, DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON ADMINISTRATIVE RECORD, ECF No. 34, AND TERMINATING CASE.**

---

Pending before the Court are the Parties' Cross-Motions for Judgment on the Administrative Record, ECF No. 34, 35. Plaintiff asserts equitable claims to bar Defendants' recovery of overpayments mistakenly made pursuant to Plaintiff's employer's long term disability benefits plan, now known as the AT&T Umbrella Benefit Plan No. 1, which is a trust governed by the Employee Retirement Income Security Act ("ERISA"). 29 U.S.C. §§ 1002 *et seq.*; Am. Compl. ¶ 1, ECF No. 22; Pl.'s Mot. J. on Administrative R. 2, ECF No. 35. The mistaken overpayments, which Defendants made over a period of eight years and despite Plaintiff's repeated notification thereof, totaled approximately $162,308.21. Ans. to Am. Compl. 6. Defendants assert a counterclaim for recovery of the mistaken overpayments under ERISA. Ans. to Am. Compl. 5–6, ECF No. 29. Because the Court finds that the Administrator's decision to recoup benefits is supported by the

administrative record, it holds that its decision was not arbitrary or capricious. However, the Court further holds that, due, in part, to the facts that Plaintiff relied on the correctness of the monthly amounts for a period of over eight years and repeatedly disclosed information that revealed the plan administrator's mistake of overpaying, Defendants are equitably barred from recovering the mistaken overpayments made up to the date hereof.

**I.      Factual Background**

In February 2001, Plaintiff Stephen Kapp ceased employment due to a disability. Defs.' Mot. J. on Administrative R. 2, ECF No. 35. Shortly thereafter, he began receiving short-term disability benefits from his former employer. *Id.* at 2. About a year later, in February 2002, Plaintiff began receiving long-term disability ("LTD") benefits under the BellSouth Long-Term Disability Plan, a trust ("Trust") created by BellSouth for the benefit of its disabled employees. Pl.'s Mot. J. on Administrative R. 2, ECF No. 34. In the following years and through a series of mergers and acquisitions, the BellSouth Long Term Disability Plan became the AT&T Umbrella Benefit Plan No. 1 (collectively "Plan"), and its administration transferred from Kemper to Sedgwick Claims Management Services, Inc. (collectively "Administrator"). *Id.* at 1.

Since 2002 the Trust has provided monthly LTD benefits to Plaintiff pursuant to the governing Plan. Def.'s Mot. J. on Administrative R. 1, ECF No. 34; *see also* ECF No. 23-3. The Plan contained four relevant provisions. First, it required Plaintiff to apply for Social Security Disability Income ("SSDI") benefits. ECF No. 23-3, at 12; ECF No. 23-4, at 9. Second, it required Plaintiff to disclose to the Administrator any SSDI benefits awarded. ECF No. 25-2, at 2. Third, it stated that any SSDI benefits awarded to Plaintiff would be deducted from the LTD benefits paid by the Trust. *Id.* ("Long Term Disability benefits will be reduced by the amount of Social Security

benefits which you are eligible to receive.")  Fourth, it provided the Trust with the right to recoup money overpaid as a result of mistakenly failing to deduct SSDI benefits from Plaintiff's LTD benefits paid by the Trust. ECF No. 23-4, at 9; ECF No. 23-1, at 31 ("If the Plan has made an erroneous or excess payment to any Participant, the Plan Administrator shall be entitled to recover such excess from the individual . . . to whom such payments were made.").

On November 18, 2002, Plaintiff began receiving SSDI benefits. Pl.'s Mot. J. on Administrative R. 2, ECF No. 35.  That day he received $25,581.00, the sum of monthly SSDI payments to which he was entitled since he ceased employment. *Id.* at 2; *see also* Defs.' Mot. J. on Administrative R. 5, ECF No. 34.  Thereafter he was to receive monthly SSDI benefits totaling $1,655.00. Defs.' Mot. J. on Administrative R. 5, ECF No. 34.  On the same day he received the first payment, he disclosed his SSDI award to the Administrator as required by the Plan. ECF No. 28-4, at 37.  Plaintiff continued to disclose the SSDI award to the Administrator for the following eight years.  Specifically, he provided written notification thereof in October 2004, ECF No. 26-4; May 2005, ECF No. 26-6 at 24; January 2008, ECF No. 27-1 at 34; October 2008, ECF No. 27-3 at 16; and July 2009. ECF No. 28-3 at 23.  Nevertheless, the Administrator at no point from 2002 to 2009 deducted Plaintiff's SSDI award from his monthly LTD benefits. Pl.'s Mot. J. on the Administrative R. 3, ECF No. 35.  On the contrary, the Administrator indicated that the amounts of its payments to Plaintiff were correct. *See, e.g.,* ECF No. 27, at 32 (Record dated August 13, 2009 stating "I have reviewed this claim. . . All applicable offsets have been addressed and there are no outstanding payment issues.")  Thus, Plaintiff received both SSDI benefits and the full amount of LTD benefits from February 2002 until August 2010.

During that period, Plaintiff made numerous financial decisions based on the amount of his monthly LTD benefits. For example, he made substantial improvements to his family's home. ECF No. 28-2, at 4. He also made substantial charitable contributions based on the LTD benefits amount. ECF No. 28-2, at 7. Further, Plaintiff offered evidence that the amount of his LTD benefits affected his children's college choices and the amount of federal funding they received. ECF No. 28-2, at 9. In addition, he alleges that he spent money caring for his parents that he would not have spent had the SSDI benefits been deducted from his monthly LTD benefits. ECF No. 28-2, at 7.

In August 2010, the Administrator discovered that Plaintiff's LTD benefits had not been offset by the monthly SSDI payments. Pl.'s Mot. J. on the Administrative R. 3, ECF No. 35. Accordingly, on August 16, 2010, the Administrator sent a letter to Plaintiff informing him of the mistake and informing him that he must repay the $162,308.21, the full amount overpaid since February 2002. *Id.* The Administrator provided Plaintiff three repayment options which were contained in the Plan: (1) full repayment; (2) withholding of benefits; and (3) monthly installments, in which the Administrator would reduce monthly LTD benefits by $500 until $162,308.21 was repaid. *Id.* Plaintiff elected the third option and appealed the Administrator's demand for repayment. *Id.* The appeal was unsuccessful, and so Plaintiff filed the present action to bar Defendants' recovery of the $162,308.21. *Id.* at 4. Plaintiff asserts the equitable claims of estoppel and laches and seeks attorney fees. Defendant has counterclaimed for attachment of Plaintiff's Social Security disability Insurance benefits and attorney fees.

## II. Standard of Review

A challenge to a plan administrator's denial of benefits is generally reviewed by a district court *de novo. See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). However,

where the plan administrator is given discretionary authority under the terms of the benefits plan, courts apply the arbitrary and capricious standard. *Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368, 1372-73 (6th Cir. 1994). When applying arbitrary and capricious review, courts affirm administrative decisions "when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome." *Davis v. Kentucky Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir.1989).

The Agreement unambiguously provided the Administrator discretionary authority to interpret the Agreement and render decisions based thereon. *See* ECF No. 23-1, at 24 ("The Plan Administrator has the authority and discretion to interpret the terms of the Plan."); *see also* ECF No. 23-4, at 14 ("all discretionary authority and powers necessary to enable it to carry out its duties."); ECF No. 23-4, at 14 (granting the Administrator the powers both "[t]o determine, in its sole discretion, the amount, manner, and time of payment of benefits, which shall be payable to any Participant, in accordance with the provisions of the Plan, and to determine the person or persons to whom such benefits shall be paid" and "[t]o decide all questions concerning the Plan."). Therefore, the Court will apply the arbitrary and capricious standard to the Administrator's decision.

**III.    Analysis**

*1. Review of the Plan's Decision*

The first issue before the Court is whether the Administrator's decision to interpret the Agreement such that the Trust could recoup its mistaken overpayments was arbitrary or capricious. This involves looking to whether its decision was reasonable based on the evidence. *See Davis v. Kentucky Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989). The administrative record shows that Plaintiff received monthly SSDI benefits; that the Administrator failed to offset the SSDI benefits from Plaintiff's monthly LTD benefits paid by the Trust; and that the Agreement

unambiguously granted the Trust the right to recoup any benefits mistakenly overpaid to Plaintiff due to a failure to set off SSDI benefits from LTD benefits. *See supra* pp. 2-4; *see also* ECF No. 23-3, at 12 ("If the monthly benefit was . . . [m]ore than it should have been, you will be billed the difference."). Because these facts in the record support the Administrator's decision to permit the Trust to recoup its mistaken overpayments, the Court concludes that the Administrator's decision to do reduce Plaintiff's benefits in order to recoup overpaid benefits was not arbitrary or capricious.

### *2. Plaintiff's Equitable Claims*

The second issue is whether, as Plaintiff claims, equity bars Defendants' recovery of the benefits mistakenly paid to Plaintiff. *See* Am. Compl. ¶ 5. The United States Court of Appeals for the Sixth Circuit has stated that, even where a benefits plan unambiguously provides the plan fiduciary a legal right to recoup an overpayment, "equitable principles may limit an ERISA fiduciary's legal right" to do so. *Butler v. Aetna U.S. Healthcare, Inc.*, 109 F.Supp.2d 856, 862 (S.D. Ohio 2000). ERISA is governed by trust law, not contract law. *Wells v. U.S. Steel & Carnegie Pension Fund, Inc.*, 950 F.2d 1244, 1250 (6th Cir. 1991) (Citing *Firestone*, 489 U.S. at 110–12). Under trust principles, a trustee or administrator may recoup overpayments to a beneficiary "even if the excess payment was the product of a unilateral mistake on the part of the trustee." *Id.* at 1255 (Feikens, J., concurring) (Citing *Hoffa v. Fitzsimmons*, 673 F.2d 1345, 1354 (D.C. Cir. 1982)). However, such recovery is precluded if the beneficiary relies on the correctness of the amounts to his detriment. *Id.* (Internal citations omitted).

In determining whether equitable principles bar recovery of a mistaken overpayments to an ERISA plan beneficiary, courts consider six factors: (1) the amount of time which has passed since the overpayment was made; (2) the effect that recoupment would have on that income; (3) the

nature of the mistake by the administrator; (4) the amount of the overpayment; (5) the beneficiary's total income; and (6) the beneficiary's use of the money at issue. *Butler* at 862 (citing *Wells v. U.S. Steel & Carnegie Pension Fund, Inc.*, 950 F.2d 1244, 1251 (6th Cir. 1991)).

Defendants seek to recover payments mistakenly made over the course of more than eight years. *See supra* at 2-4. Moreover, they do so after Plaintiff repeatedly notified the Administrator of his SSDI award, starting the day of the award. *Id.* These facts alone weigh heavily against Defendants in the equitable analysis .

What is more, Plaintiff relied on the correctness of the amount of his LTD payments, having made innumerable financial decisions based on thereon since February 2002. *See supra* pp. 3-4; Pl.'s Mot. J. on Administrative R. 7, ECF No. 35. Thus, to require repayment after eight years of what Plaintiff–and Defendants--believed to be correct LTD payments would likely have a severe impact Plaintiff and his family. This impact would likely be far more severe than that on the Trust.

Furthermore, the Court finds that the $162,308.21 figure likewise weighs against Defendants in the equitable analysis, especially in light of the Administrator's repeated mistakes. The Court finds that large, single-payment lump sums weigh in favor allowing recovery of a mistaken overpayment, whereas a large accumulation of payments over time weighs against such recovery. The record shows that requiring repayment of $162,308.21, accumulated over eight years, would rest a nearly unbearable financial burden on Plaintiff. For the foregoing reasons, the Court concludes that equity bars Defendants' recovery of its mistaken overpayments from until the date hereof.[1]

---

[1] The Court's holding does not preclude Defendants from offsetting the amount of Plaintiff's monthly SSDI benefits beginning the date hereof.

Plaintiff has not carried his burden to establish a claim to continue to receive overpayments into the future. A party may establish equitable estoppel by showing that he or she reasonably relied on a material misrepresentation or omission and thereby suffered damages. Restatement of Contracts 2d § 90 comment a). Plaintiff's reliance on such misrepresentation must have required him to change his position for the worse. *Heckler v. Community Health Services Inc.*, 467 U.S. 51 (1984). Plaintiff has not established that he has changed his position for the worse in the future in a manner meriting continued payments at the same rate. C.f. *DiTommaso v. Union Cent. Life Ins. Co.*, 1991 WL 124601, *5 (E.D. Pa. 1991).

Neither side has prevailed on their respective claims for attorney's fees. "In an action by [an ERISA] plan participant, the district court, in its discretion, 'may allow a reasonable attorney's fee and costs of action to either party.'" *Moon v. Unum Provident Corp.*, 461 F.3d 639, 642 (6th Cir. 2006) (quoting § 1132(g)(1)). "[O]ur circuit recognizes no presumption as to whether attorney fees will be awarded." *Foltice v. Guardsman Prods., Inc.*, 98 F.3d 933, 936 (6th Cir. 1996).

The Sixth Circuit applies a five-factor test, first set forth in *Secretary of the Department of Labor v. King*, 775 F.2d 666 (6th Cir. 1985), to determine whether a district court properly exercised its discretion in awarding fees under § 1132(g)(1):

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*Moon*, 461 F.3d at 642 (citing *King*, 775 F.2d at 669). "No single factor is determinative, and thus, the district court must consider each factor before exercising its discretion." Id. at 642-43.

In this case, neither party demonstrated bad faith. The Court finds that the Plan is more able to satisfy an award of attorney fees, but finds the deterrent effect negligible, given the absence of bad faith in the case. Plaintiff did not seek to confer a common benefit upon all participants in the Plan, nor to resolve significant legal questions regarding E.R.I.S.A. Finally, while Plaintiff prevailed on one of his claims, the positions of both parties are relatively meritorious. For these reasons, neither party is entitled to an award of attorney fees.

## IV.  Conclusion

Plaintiff claimed that equity barred Defendants' recovery of its mistaken overpayments of long-term disability benefits, which totaled $162,308.21 over a period of eight years. Defendants asserted a counterclaim for the repayment of the full $162,380.21. Because the record supported the Administrator's decision to require Plaintiff the overpayments, the Court has held that the decision was not arbitrary or capricious. However, the Court has further held that, in light of the eight-year period over which the mistaken overpayments accumulated and other factors, laches bars Defendants' recovery of the mistaken overpayments. Equitable estoppel does not entitle Plaintiff to continue to receive payments without a Social Security Disability Insurance offset. Each side is to bear its own attorney fees. Plaintiff's Motion, ECF No. 35, is **GRANTED** with regard to the Laches claim, but **DENIED** with regard to the claims for estoppel and attorney fees. Defendants' Motion, ECF No. 34, is **DENIED** with regard to Plaintiff's claim for laches and on Defendants' claim for attorney fees, but granted with regard to Plaintiff's claim for estoppel. All claims having been resolved, the captioned cause is hereby **TERMINATED** upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

**DONE** and **ORDERED** in Dayton, Ohio, this Wednesday, January 2, 2013.[2]

                s/Thomas M. Rose
              THOMAS M. ROSE
           UNITED STATES DISTRICT JUDGE

---

[2] The Court acknowledges the valuable contribution and assistance of judicial extern Benjamin J. Christoff of the University of Dayton Law School in drafting this opinion.